IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MINNIE MCCALL,                    )
                                  )
        PLAINTIFF,                )
                                  )
v.                                )   CIVIL ACTION NO. 2:10-cv-367-MEF
                                  )
MONTGOMERY HOUSING                )
AUTHORITY, et al.,                )   (WO-Publish)
                                  )
        DEFENDANTS.               )

## MEMORANDUM OPINION AND ORDER

In this case, the Court is called upon to address the claims of a tenant of Section 8 federally subsidized rental property against the local housing authority and several of its employees for alleged violations of her due process rights, federal housing law, and state law arising out of the attempted termination of her Section 8 benefits. Pursuant to 42 U.S.C. § 1983, Minnie McCall ("McCall") brings suit against the Montgomery Housing Authority ("MHA"), Evette Hester ("Hester"), Cathy Harris ("Harris"), and Clevette Ellis ("Ellis") for alleged violations of her federally protected rights under Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. § 1437 ("Section 8") and various amendments to the United States Constitution. McCall also brings breach of contract and negligence claims pursuant to Alabama law. This cause is before the Court Defendant Clevette Ellis's Motion for Summary Judgment (Doc. # 88) and on the Motion for Summary Judgment (Doc. # 85) that MHA, Hester and Harris jointly filed. For the reasons set forth below, the Court finds that

Defendant Clevette Ellis's Motion for Summary Judgment (Doc. # 88) is due to be
GRANTED and the  Motion for Summary Judgment (Doc. # 85) that MHA, Hester and
Harris is due to be GRANTED in part and DENIED in part.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over the claims in this action pursuant to
28 U.S.C. §§ 1331, 1343, and 1367.  No challenge is made to the personal jurisdiction over
the parties or the appropriateness of venue;[1] both of which are supported by the facts of this
case.

## STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), "a party may move for summary
judgment, identifying each claim or defense — or the part of each claim of defense — on
which summary judgment is sought."  A court presented with such a motion must grant it "if
the movant shows that there is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  A genuine dispute as to a material fact can only be
found "if the evidence is such that a reasonable jury could return a verdict for the nonmoving
party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  According to the
Supreme Court, "a party seeking summary judgment always bears the initial responsibility
of informing the district court of the basis for its motion, and identifying those portions of
[the record] which it believes demonstrate the absence of a genuine issue of material fact."

---

[1]  Pursuant to 28 U.S.C. § 1391(b), venue is appropriate in this district.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quotation omitted).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

After the movant satisfies this requirement, the burden shifts to "the adverse party [who] must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quotation omitted). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The Eleventh Circuit Court of Appeals has held that "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985) (citation omitted).

To the extent that any party submits argument in support of or in opposition to a motion for summary judgment, to establish that a fact either cannot be or is genuine, the party may only do so by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials.  *See* Fed. R. Civ. P. 56(c)(1).  While

3

a court may consider other materials in the record, the Federal Rules of Civil Procedure only require the court to consider factual materials to which it has been properly referred by citation. *See* Fed. R. Civ. P. 56(c)(1) & (3). If a party fails to properly support an assertion or fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may, *inter alia*, consider the fact undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show that the movant is entitled to it. Fed. R. Civ. P. 56(e).

## FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts relevant to the issues raised by defendants' motions:

For almost four decades, the federal government has provided rental assistance to low-income, elderly, and disabled families through the Section 8 housing program.[2] The Section 8 program is administered by the Department of Housing and Urban Development ("HUD"), which has promulgated regulations governing the Section 8 program ("HUD regulations"). On the local level, the Section 8 program is administered by local public housing authorities. The Section 8 program allows eligible families to apply to the local public housing authority

---

[2] This program is also called the Housing Choice Voucher Program. *See* 24 C.F.R. §982.302(a).

for assistance.  If the application is approved, the local public housing authority issues a Section 8 voucher to the family.  With this voucher the family may locate a suitable rental unit in the private market and enter into a lease that is in accordance with HUD regulations. HUD has published regulations to implement and administer the Section 8 program.  The HUD regulations pertinent to this lawsuit provide a right to an informal hearing to applicants who are terminated from the Section 8 program.  *See* 24 C.F.R. §§ 982.551 - 982.553, & 982.555.

MHA provides public housing services to residents in the Montgomery area.  At all times material to this suit, Hester served as the Executive Director of the MHA.  As part of its housing-related services, MHA administers Section 8 benefits available to qualified recipients pursuant to guidelines and regulations the Department of Housing and Urban Development ("HUD") promulgated and pursuant to applicable federal law.  At all times relevant to this action, Harris served as the Section 8 Director for the MHA.  As Section 8 Director, Harris was charged with overseeing the whole Section 8 program for MHA.  This included responsibility for functions such as waiting lists, recertification, move-ins, move-outs, reports, annual reports, payroll, decisions regarding termination of assistance, and other functions.

Under federal regulations and law, recipients of Section 8 benefits and those family members living with the recipient must refrain from engaging in certain types of criminal behavior.  In particular these individuals cannot engage in drug-related criminal activity,

violent criminal activity, or other criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents or persons residing in the immediate vicinity of the recipient's premises. This prohibition is set forth not only in the applicable regulations but also in the MHA Administrative Plan. *See* Doc. # 85 at Ex. E p. 39. Incidents of actual or threatened domestic violence shall not be good cause for terminating the assistance of the victim of such violence. *Id*. at p. 40.

From time to time, MHA runs background checks on existing Section 8 recipients and their families to ensure compliance with the restrictions on criminal behavior. In order to make such checks at the relevant period of time, MHA entered into an agreement with the Montgomery County Sheriff's Department and a public safety officer named Eric Brascomb ("Brascomb") to run the criminal background checks.[3] Once the MHA receives information from the Montgomery County Sheriff's Department, which consists only of the name of the person involved and the name of the offense with which they were charged, Harris reviewed the information. If Harris determined that a receipt had violated the MHA rules, she sent a letter to the Section 8 recipient advising the recipient of the termination of the benefits and the right to a hearing.

MHA employed Ellis in its human resources department as Personnel Director for

---

[3] According to his testimony, Brascomb was a "contract employee with the public safety coordinator's position." MHA provided him with an office and an email account, but it did not control his work schedule. MHA did not provide Brascomb formal training. Brascomb performed several tasks for MHA including reviewing the criminal records of voucher recipients to see whether their criminal records violated HUD's requirements.

MHA.[4]  She did not work in the Section 8 program itself, but did occasionally serve as a

hearing officer for MHA.  MHA provided Ellis with no formal training relating to her duties

as a hearing officer.[5]  Hester did sit down with Ellis and discuss the policies and procedures

for conducting termination hearings that were contained in MHA's Administrative Plan.  On

some occasions she served as a hearing officer at administrative hearings relating to the

termination of Section 8 benefits.   The MHA Administrative Plan contains detailed

information regarding procedures for terminating the assistance provided to participants in

the Section 8 Program.  Doc. # 85 at Ex. E pp. 59-60.  Ellis testified that when she acted as

a Hearing Officer for MHA, she followed the policies and procedures MHA had established.

However, the evidence before the Court calls this factual assertion into question.[6]  While her

responsibilities were broad enough to encompass other issues, during her tenure with MHA,

Ellis only served as a hearing officer in hearings requested when a recipient had received a

notice that the Section 8 benefits were being terminated due to criminal activity.  Ellis admits

that after conducting such hearings she would confer with Harris regarding whether the

information received was adequate enough to determine if the factual basis for finding a rules

---

[4]  Ellis reported directly to Hester.  Harris did not supervise Ellis's activities.

[5]   It is undisputed that prior to her employment with MHA, Ellis had experience working as a hearing officer at Webster Industries and a public information officer at the Alabama Supreme Court.

[6]  For example, a reasonable jury could easily find that the notice sent to McCall after the "informal hearing" does not comply with the requirements for such a notice found in the MHA Administrative Plan.  *See* Doc. # 85 at Ex. E p. 60.

violation existed or not.  Furthermore, Ellis admits that she could not think of a single criminal charge of any type that did not, in her view, violate the peaceful enjoyment of the neighbors.

When a Section 8 benefits recipient received a termination notice, he could contact either Ellis or Harris to request a hearing.  Upon receipt of a request for a hearing, Harris would work with Ellis to schedule a hearing.  The regulations set forth in 24 C.F.R. § 982.555 govern the hearings process.   The hearings are held in the Section 9 department. Harris scheduled the hearings and sent out notice to the Section 8 benefits recipient who had requested a hearing.  If such a hearing needed to be rescheduled, the recipient could call either Harris or Ellis.

McCall and her children participated in the Section 8 program MHA administered. In late August of 2009, Harris received information that McCall had an active warrant for first degree criminal mischief and that her daughter had a charge if theft by fraud.[7]  Harris drafted the notice of termination of assistance letter for McCall on August 31, 2009.  In early September of 2009, McCall received the letter from Harris regarding termination of McCall's housing assistance.   The only explanation as to the basis for the termination was the following text contained in the letter:

---

[7] It was later determined that the person involved in the theft by fraud case was not McCall's daughter.  Moreover, McCall admits that the warrant against her exists, but vigorously challenges the factual predicate for the warrant which she insists arose out lies told by family members against her after a family dispute.

> **<u>Violation of Housing Choice Voucher</u>.  Section 4.  Obligations of the Family: D(4) Engaged in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premise.**

Doc. 93-2 (emphasis in original).  The Harris's letter also advised McCall that if she wished to appeal the decision, she had the right to an informal hearing, but that the request for such a hearing must be submitted to MHA in writing within ten days from August 31, 2009.  The letter advised McCall of the address to which to mail or deliver a written hearing request.

On September 2, 2009, McCall drafted a letter to the Section 8 office of the MHA regarding the termination of her assistance and formally asking to appeal.  In this letter, she denied engaging in any drug-related criminal activity or violent criminal activity or other criminal activity that threatened the health, safety or right to peaceful enjoyment of property by her neighbors.  She also set forth the only things she could think of that might have lead to the alleged violation.   She stated that her house was drug free but that a neighbor was angry with her for telling the landlord that the neighbor was smoking marijuana and that the odor was coming in her unit.  She also outlined that her sister Frances Fanning, who was also a neighbor, was both angry with McCall and mentally ill.[8]

After receiving the termination letter, McCall also began to search for legal

---

[8]  Indeed, Frances Fanning's husband and son were the people who had made the complaint to police which resulted in the a February of 2008 indictment against McCall for criminal mischief relating to an incident in September of 2007.

9

representation.  Ultimately, an attorney from Legal Services Alabama agreed to act on McCall's behalf.  On September 9, 2009, this attorney timely requested a hearing to appeal the termination decision.  After receiving the termination letter and before the hearing, McCall also contacted Harris many times trying to get information as to what procedures had been used to make the determination that McCall had engaged in criminal activity.  Harris told her that the information would be presented at the hearing and refused to provide any specific information about the alleged violation of Section 4 of the Housing Choice Voucher.

On September 9, 2009, MHA sent McCall a letter advising her that her hearing had been scheduled in accordance with her request.  The hearing was set on September 18, 2009 at 1:30 p.m.  The letter advising McCall of the date and time of the hearing also informed her of the way to re-schedule the hearing if necessary by calling a specified telephone number.[9] The letter also cautioned McCall that "[f]ailure to appear for [her] scheduled appointment will result in a possible termination of [her] housing assistance."  *See* Doc. # 93-7.

On September 16, 2009, McCall wrote a letter to Harris and Hester.  In this letter, McCall discussed possibly rescheduling a re-examination until after her hearing.  This letter discloses that McCall is ill and that her asthma was acting up.  She also complained of certain people conspiring against her.

---

[9]  According to Ellis, at that time, a person needing to reschedule such a hearing could do so by contacting either Harris or Ellis.

On September 18, 2009, McCall was still ill[10] and could not attend the hearing. Although the record does not make clear exactly when, McCall avers that she called Hester's office several times to try to reschedule the hearing.[11]  McCall spoke to Hester's secretary during these calls.  Additionally, at times and dates unspecified, McCall also called and left voice-mail messages with Ellis' office trying to schedule another hearing.  Neither McCall, nor the attorney from Legal Aid who was then representing her, appeared at the hearing.

Somehow, a meeting of some type was scheduled to occur between MHA, MHA's counsel, McCall, and McCall's counsel on September 24, 2009.  McCall's counsel cancelled this meeting apparently after having had a falling out with McCall.  On September 28, 2009, McCall's counsel advised MHA that Legal Services was no longer representing McCall.

On September 29, 2009, Ellis drafted a Memorandum regarding the termination of McCall's Section 8 benefits.  This was a form letter which did not contain any specific factual findings relating to the reason for the termination of the benefits, nor did it mention anything regarding the failure of either McCall or her attorney to appear at her hearing.  The substance of the letter was limited to the following:

---

[10]  McCall's chronic asthma was acting up.

[11]  Defendants dispute that any such calls were made prior to the date and time on which the hearing was scheduled.  While the Court must credit McCall's affidavit testimony that she made several calls to try to reschedule the hearing after she was ill on the date of the hearing, the Court does not find that her testimony creates a genuine issue of material fact as to whether she made any such calls before the time and date when her hearing was scheduled.

> As the hearing officer for the Section 8 Tenant Hearing Grievance held in September regarding termination of rental assistance, I am notifying you that your assistance will be terminated effective September 30, 2009.
>
> Please note that this brings closure to this process.
>
> Thanks for your attention in this important matter.

(Ex. J to Doc. 85). In fact, this letter was identical to the other letters that Ellis sent out after conducting similar hearings for other benefits recipients.

From the record before this Court it appears that on September 30, 2009, police arrested McCall on her outstanding warrant for criminal mischief. As of the date of this Memorandum Opinion and Order, the charge remains pending and has not been resolved.

On October 1, 2009, McCall wrote to Ellis asking for an explanation of how her case had been closed. McCall explained that she had been very ill for several weeks. In part, she blamed her health problems on the termination notice she had received which allegedly caused her landlord to decline to repair a leaking roof which resulted in mold and mildew which triggered her asthma. McCall again denied having a criminal background and promised that a lawsuit would follow.

On October 19, 2009, McCall and others filed a suit against MHA, Hester, Harris, and Ellis. This suit alleged breaches of federal housing law and denials of due process in violation of the constitutional rights of McCall and the other plaintiffs. After all the other plaintiffs agreed to settle the case and McCall refused to do so on the terms offered, the Court severed McCall's claims from the claims of the other plaintiffs and this lawsuit was

born.   Prior to the severance of the cases, the Court issued a preliminary injunction prohibiting MHA from terminating the Section 8 benefits provided to McCall.   McCall did have to move to a different, and in her view, less safe and desirable rental unit as a result of the events on which this lawsuit is based, but currently, she continues to receive Section 8 benefits.

As of the date of this Memorandum Opinion and Order, McCall's claims are set forth in the Amended Complaint (Doc. # 80).   McCall seeks compensatory damages and declaratory relief against the named defendants.   McCall alleges that the notice that she received from MHA regarding the impending termination of her Section 8 benefits was deficient because it did not provide sufficiently specific information.   She also alleges that she was not afforded a hearing or that she was provided a constitutionally defective hearing. She alleges that the decision issued after the hearing made no findings of fact denied her due process rights as wells as rights created by the Federal Housing Act.   In addition to her claims under federal law, McCall also alleges claims arising under Alabama law.

## DISCUSSION

### A.  Claims against Ellis

The claims in this action against Ellis arise out of the way that she performed her duties as a hearing officer during the course of her employment with MHA.   Specifically, the way she acted with respect to her handling of the hearing for McCall.   Ellis contends that quasi-judicial immunity protects her from such claims.   In this Court's view, quasi-judicial

immunity affords Ellis protection from all of McCall's claims arising out of the performance of her hearing officer duties.[12]

Courts have long recognized immunity from suit which protects judicial officers from suit pursuant to § 1983.

> Judges are entitled to absolute judicial immunity from damages under section 1983 for those acts taken while they are acting in their judicial capacity unless they acted in clear absence of all jurisdiction. A judge does not act in the clear absence of all jurisdiction when he acts erroneously, maliciously, or in excess of his authority, but instead, only when he acts without subject-matter jurisdiction.

See, e.g., Drees v. Ferguson, 396 F. App'x 656, 659 (11th Cir. 2010) (quotations and internal citations omitted). Courts have recognized that judicial immunity extends to "hearing officers" who conduct administrative hearings just as it does to those elected or appointed to preside over judicial proceedings. See, e.g., Dixon v. Clem, 492 F.3d 665, 674-75 (6th Cir. 2007); Smith v. Shook, 237 F.3d 1322 (11th Cir. 2001). Indeed, courts have held that hearing

---

[12] As McCall articulated her claims in both the Order on Pretrial Hearing and the pleadings in this case, it would seem that she asserts all of the claims in the lawsuit against all of the defendants. Nevertheless, the Court finds absolutely no factual or legal basis for McCall's claims under Alabama law against Ellis, as opposed to the other defendants to this action. For example, the breach of contract claim alleges that Ellis and the other defendants breached the contract between MHA and McCall. McCall makes no effort to explain or support any basis for such a claim against Ellis. Ellis was not a party to this contract. The remaining state law claims all have to do with failing to employ, train, and monitor Ellis. Clearly, such claims cannot be brought against Ellis, rather they fault other defendants for their actions relating to selecting, training, and monitoring Ellis. Accordingly, the Court is of the opinion that McCall does not urge any of her state law claims against Ellis, as opposed to other defendants despite the lack of precision in the wording of the plaintiff's pleadings and contentions.

officers who preside over hearings regarding the termination of Section 8 benefits, just like the one at issue in this case,  are entitled to the protection of judicial immunity.  *See, e.g., Wood v. Willis*, No. 3:09cv2412, 2010 WL 3808279 at *9-*10 (N.D. Ohio Sept. 27, 2010); *Lopez v. Johnson*, 1:09cv2174-LJO-JLT, 2010 WL 2044683 at *4 (E.D. Cal. May 20, 2010). The Court is persuaded that the allegations against Ellis clearly implicate only conduct for which she is entitled to quasi-judicial immunity.  Accordingly, she is entitled to judgment as a matter of law with respect to McCall's claims against her.

## B.  Claims against Hester, Harris, and MHA

### 1.  Claims Pursuant to 42 U.S.C. § 1983

#### a.  Overview of Analytical Paradigm and Nature of McCall's Claims

All of McCall's federal claims in this action are brought against defendants pursuant to 42 U.S.C. § 1983.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 provides a remedy when person acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States.  *See, e.g.,* 42 U.S.C. § 1983; *Graham v. Connor*, 490 U.S.

386, 393-94 (1989) ("§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred") (internal quotes omitted); *Cummings v. DeKalb County*, 24 F.3d 1349, 1355 (11th Cir. 1994). "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *See, e.g., Blessing v. Freestone,* 520 U.S. 329, 340 (1997) (emphasis in original). *Accord, Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002).

In the § 1983 claims in this lawsuit, McCall contends that Defendants violated her right to due process in several ways: (1) by failing to provide adequate notice prior to terminating her participation in the Section 8 benefits program; (2) by failing to provide an impartial hearing officer to hear McCall's appeal of the decision to terminate her Section 8 benefits; (3) by failing to present evidence to establish that she had violated the Section 8 assistance agreement; and (4) by  issuing a pro forma hearing decision letter rejecting McCall's appeal without any adequate basis for termination or any proper hearing first. McCall also contends that Defendants violated federal housing laws in a variety of ways: (1) by failing to send her a Section 8 termination notice which provided a statement of the grounds for the termination; (2) by failing to provide McCall with a copy of the record and an opportunity to dispute the accuracy and relevance of that record; and (3) by sending her a hearing decision letter that did not provide a statement of the grounds for the decision.

McCall alleges that Defendants, through several actions performed under color of law, deprived her of various rights conferred by the United States of America's Constitution and

Section 8.   Therefore, McCall must allege that every action taken by defendants 1) was "under color" of law as defined by § 1983 and cases interpreting that language, and that each action 2) deprived her of a specific right conferred by the Constitution or a federal statute. In these cases, the parties do not dispute that defendants acted under color of law.   Thus, the focus of the arguments before this Court center on the alleged deprivation of Constitutional or statutory rights.

With respect to their claims against MHA, McCall faces an additional burden of proof.   Because the language of § 1983 speaks in terms of creating liability for persons who act in a certain fashion, there was initially a question as to whether the statute created a remedy for violations of rights by municipalities or other governmental entities which do not at first blush constitute persons.   The United States Supreme Court resolved this issue by explaining that local governments are "persons" that can be sued under § 1983.   *See, e.g., Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).   A municipality or governmental entity is only liable under § 1983 if it is found to have *itself* caused the violation of federal law or deprivation of federally created rights; a municipality or governmental entity cannot be held vicariously responsible under a theory of *respondeat superior*.   *Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007).   Thus, to hold a municipality or governmental entity liable under § 1983, a plaintiff must first show that the alleged injury resulted from the execution of a governmental entity's policy or its customs. *See, e.g., Skop*, 485 F.3d at 1145; *Grech v. Clayton County*, 335 F.3d 1326, 1320 (11th Cir.

17

2003).   Defendants have not argued that the alleged injuries did not result from a governmental entity's official policies or customs.

### b.  Analysis of Claims

As explained above, McCall contends that MHA, Hester, and Harris violated her due process rights as protected by the Fourteenth Amendment and her statutory rights under the United States Housing Act of 1937 and the HUD Regulations promulgated thereunder.  No party to this action has disputed that recipients of public assistance, such as Section 8 assistance, have a protected property interest in continuing to receive such assistance, and that violations of federal housing laws are actionable under Section 1983.  *See, e.g., Wright v. Roanoke Redev. & Hous. Auth.,* 479 U.S. 418, 429 (1987); *Goldberg v. Kelly,* 397 U.S. 254, (1970); *Kapps v. Wing,* 404 F.3d 105, 113 (2d Cir.2005) ("procedural due process protections ordinarily attach where state or federal law confers an entitlement to benefits"); *Price v. Rochester Hous. Auth.,* No. 04-CV-6301, 2006 U.S. Dist. LEXIS 71092, at *17-18, 2006 WL 2827165 (W.D.N.Y. Sept. 29, 2006) (noting the due process protection afforded to Section 8 participants).[13]

In order to terminate such a protected property interest, due process requires (1) timely

---

[13]   In this Court's view, it is possible that later cases from the United States Supreme Court and the Eleventh Circuit Court of Appeals may have altered the analysis of whether § 1983 may be used to enforce claims of alleged violation of the Housing Act and the HUD Regulations, but the Court need not consider this issue because none of the defendants have raised it in this case.

and adequate notice, including the reasons for the proposed termination, (2) an opportunity to be heard at a pre-termination hearing, including the right to present evidence and confront and cross-examine witnesses, (3) a right to be represented by counsel at the hearing, (4) a written decision, including the reasons for the determination and the evidence on which the decision maker relied, and (5) an impartial decision maker. *See Goldberg,* 397 U.S. at 266-71.  The HUD Regulations also require the basic procedural guidelines set forth in *Goldberg.* *See* 24 C.F.R. §§ 982.552 and 982.555.  Moreover, due process generally requires the decision-maker to state the reasons for his determination and indicate the evidence upon which he relied.  *See Goldberg*, 297 U.S. at 271.  However, the decision need not amount to a "full opinion or even formal findings of fact and conclusions of law."  *Id.*  The HUD regulations governing housing assistance termination hearings reflect the *Goldberg* standard: "[t]he person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision."  24 C.F.R. § 982.555(e)(6).

McCall contends that the notice she received regarding the termination of her Section 8 benefits was deficient.  The Court agrees.  The Court acknowledges that a panel of the Eleventh Circuit Court of Appeals has held, in an unpublished decision, that a Section 8 termination hearing notice is not required to specify the individual alleged to have committed the illegal activity or to specify the time that the activity took place.  *See, e.g., Ervin v. Housing Auth. of Birmingham Dist.*, No. 07-14219, 2008 WL 2421799 at *3 (11th Cir. June 17, 2008).  Nonetheless, prior binding authority provides that a notice that merely parrots the

19

broad language of applicable regulations is insufficient. *See Billington v. Underwood*, 613 F.2d 91, 94 (5th Cir. 1980).[14]  Indeed, even the *Ervin* decision acknowledges that as the notice approved in that case not only invoked the language of the HUD regulation violated, but also provided a description of "the factual basis for the determination."  2008 WL 2421799 at *3.  Here, it is undisputed that the notice contained only the language from the HUD regulation MHA believed McCall had violated and did not provide any description of the factual basis for the determination.  Accordingly, a reasonable jury could find for McCall on her claim that the notice was deficient.  Furthermore, a reasonable jury could find that the deficiencies in the notice coupled with the refusal of MHA employees to provide further information to McCall prior to the hearing interfered with her opportunity to present evidence at the hearing itself.  Finally, a reasonable jury could find that the written decision issued after the "hearing" was deficient because it did not contain any reasons whatsoever for the decision.

For these reasons, the Court finds that MHA, Hester, and Harris fail to establish entitlement to judgment as a matter of law on McCall's claims pursuant to § 1983. Furthermore, genuine issues of facts material to such claims exist.  Accordingly, the motion for summary judgment as to these claims is due to be DENIED.[15]

---

[14]  In *Bonner v. City of Prichard*, *Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[15]  The Court does not find that the arguments regarding McCall's failure to appear at the hearing constituting a waiver of any due process violation to be persuasive.  These

### 2.  Claims Pursuant to State Law

McCall's claims pursuant to Alabama law are as follows: (1) a claim that Defendants breached the contracts between MHA and McCall, specifically the Housing Assistance Payment Contract and the Recertification Agreement; (2) a claim that Defendants were negligent in their failure to employ a competent, impartial hearing officer to conduct hearings concerning the termination of Section 8 benefits; (3) a claim that Defendants were negligent in their failure to train the hearing officer to the point of competence; and (4) a claim that Defendants were negligent in their supervision of the hearing officer who conducted the hearings concerning the termination of Section 8 benefits.

McCall has conceded that Defendants are entitled to summary judgment on the claim that Defendants were negligent in their failure to employ a competent, impartial hearing officer to conduct hearings concerning the termination of Section 8 benefits.  Accordingly, Defendants' motion for summary judgment is due to be GRANTED as to that claim.

With respect to McCall's claims of negligence in the training and supervision of Ellis, the Court finds that genuine issues of material fact exist and that MHA, Hester, and Harris have failed to show that they are entitled to judgment as a matter of law.   Accordingly, the motion for summary judgment is due to be DENIED as to those claims.

---

arguments stretch the authorities on which they are based too far.  Moreover, the argument that the decision after the hearing was based on a preponderance of the evidence does not persuade the Court that MHA, Harris, and Hester are entitled to judgment as a matter of law. Material facts are in dispute with respect to this argument, and the entitlement to judgment as a matter of law on this basis is not supported in the circumstances of this case.

With respect to McCall's claims of breach of contract, the Court finds no evidence from which a reasonable jury could find in favor of McCall as to such claims against Hester and Harris, two individuals who were not parties to the contract alleged to have been breached.  Moreover, McCall provides no legal support for her contention that Alabama law allows suit against such persons in these circumstances.   Accordingly, to the extent that the motion for summary judgment seeks judgment as a matter of law on the breach of contract claims against Hester and Harris, it is due to be GRANTED.   With respect to MHA, the analysis is different.  MHA is a party to a contract with McCall.   Genuine issues of material fact preclude summary judgment in MHA's favor with respect to McCall's breach of contract claim against it.  Accordingly, the motion is due to be DENIED with respect to that claim.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1.  Clevette Ellis's Motion for Summary Judgment (Doc. # 88) is GRANTED to the extent that it is directed to the claims brought pursuant to 42 U.S.C. § 1983 and all claims against Ellis are DISMISSED with PREJUDICE for the reasons set forth above.  It is further ORDERED that Defendant Clevette Ellis's pending motion in limine (Doc. # 120) is DENIED as moot.

2.  The Motion for Summary Judgment (Doc. # 85)  is GRANTED in part and DENIED in part as set forth below:

    a.  The motion is DENIED with respect to McCall's claims pursuant to 42

U.S.C. § 1983.

      b.  The motion is GRANTED with respect to McCall's claims for breach of contract to the extent those claims are brought against Hester and Harris, and DENIED to the extent that those claims are brought against MHA.

      c.  The motion is GRANTED with respect to McCall's claim that Defendants were negligent in their failure to employ a competent, impartial hearing officer to conduct hearings concerning the termination of Section 8 benefits.

      d.  The motion is DENIED with respect to McCall's claim that MHA, Hester, and Harris were negligent in the training and supervision of Ellis.

    DONE this the 12th day of September, 2011.

                    /s/ Mark E. Fuller
                UNITED STATES DISTRICT JUDGE